IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| KENNETH GOFF (aka JOHN HERRINGTON), <br> *Plaintiff*, <br><br> v. <br><br> MCLENNAN COUNTY, *et. al.*, <br> *Defendants*. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Civil Action No.:  6:21-cv-494 |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF THE COURT:**

NOW COMES KENNETH GOFF (aka JOHN HERRINGTON), Plaintiff herein, and files this Original Complaint against MCLENNAN COUNTY, CORRHEALTH LLC, JOEL BARRIENTOS, BILLY GARRETT, DANITA LOFTIS, DEBORAH SANT'ANNA, and MELISSA JARRETT (collectively "Defendants" herein), and will show the Court the following:

### INTRODUCTION

1. Plaintiff brings this lawsuit as a result of injuries sustained stemming from his mistreatment and wrongful continued detention while he was confined in the McLennan County Jail. Plaintiff was incarcerated on a charge for aggravated armed robbery – a charge from which Plaintiff was entirely exonerated and determined innocent, his arrest being based on mistaken identity.

2. In May 2019, Plaintiff was transferred to the McLennan County Jail. At the time of his transfer to the McLennan County Jail, and for a period of approximately 6 years prior thereto, Plaintiff was taking numerous prescribed medications for a number of medical issues related to seizures, bipolar disorder, schizophrenia, and depression. Those medications include, but are not limited to, Depakote and Seroquel, one being an anticonvulsant used to treat seizures and bipolar disorder and another being an antipsychotic used to treat schizophrenia, bipolar disorder, and depression.

1

3. Despite Plaintiff's serious and extensive psychiatric history of mental illness, and without consulting his outside physician or psychiatrist, McLennan County, CorrHealth and medical staff, including Danita Loftis and Deborah Sant'Anna, ordered discontinuation of Plaintiff's prescribed medication on or about May 16, 2019. Defendants did this despite being aware of Mr. Goff's serious healthcare needs. On this date, while Plaintiff was incarcerated and a pre-trial detainee and wholly dependent on Defendants for his basic human and medical needs and adequate care, Plaintiff failed to receive such care and have his basic human needs met, and Plaintiff was deprived of his medically necessary psychological medications and suicide prevention. Ultimately, and as a result, when Plaintiff had a psychological episode as a result of his being deprived necessarily medication, Defendants used this as a reason to wrongfully continue his detention, despite the fact that the reasons for his actions were known. Further, Defendants continued thereafter to ignore Mr. Goff's repeated requests for treatment and indications to them regarding his suicidal thoughts and ideation. Defendants further ignored Plaintiff's reports of threats from another inmate, which was ultimately followed in his being sexually assaulted by that inmate. As a result of the above, Plaintiff attempted suicide shortly thereafter.

4. As a result of Defendants' actions, Mr. Goff suffered injuries, attempted suicide, and was sexually assaulted. Accordingly, he brings suit pursuant to the Fourteenth Amendment under decades-old Fifth Circuit precedent that inadequate suicide prevention jail practices and customs caused his injuries and that Defendants acted with deliberate indifference to the substantial risk of serious harm to Mr. Goff, such risk that Defendants were subjectively aware of. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 636 (5th Cir. 1996) (*en banc*); *Flores v. County of Hardeman*, 124 F.3d 736, 738 (5th Cir. 1997). He also brings suit against those who provided him negligent medical care pursuant to Chapter 74 of the Texas Civil Practice and Remedies Code under pendant jurisdiction.

**I. JURISDICTION & VENUE**

5. This Court has jurisdiction over Plaintiff's federal claims, under 28 U.S.C. § 1331 and 2201, 42 U.S.C § 1983 and 1988, and the Fourteenth Amendment to the United States Constitution, and supplemental jurisdiction under 28 U.S.C. § 1367(a), to hear Plaintiff's state law claims under Chapter 74 of the Texas Civil Practice & Remedies Code and any other state law claims.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b) because the incidents at issue took place in McLennan County, Texas, within the United States Western District of Texas.

**II. PARTIES**

7. PLAINTIFF KENNETH GOFF (AKA JOHN HERRINGTON) is a resident of Texas.

8. DEFENDANT McLENNAN COUNTY is a governmental body existing under the laws of the State of Texas and can be served with process by serving the County Judge of McLennan County, Texas wherever he is found. At all times material, McLennan County was acting by and through its agents and employees, acting in the course and scope of their employment and authority.

9. CORRHEALTH LLC is a Texas Limited Liability Company that can be served by serving its registered agent Michael T. Murphy at 1305 Hunters Glen, Royce City, Texas 75189. At all times material, CorrHealth was acting by and through its agents and employees, acting in the course and scope of their employment and authority.

10. DEFENDANT JOEL BARRIENTOS is an individual residing in the State of Texas, who may be served wherever he may be found. At times material hereto, Barrientos was acting as a Sergeant in the McLennan County Jail.

11. DEFENDANT BILLY GARRETT is an individual residing in the State of Texas, who may be served wherever he may be found. At times material hereto, Garrett was acting as a Corporal in the McLennan County Jail.

3

12. DEFENDANT DANITA LOFTIS, PA is an individual residing in the State of Texas, who may be served wherever she may be found.

13. DEFENDANT DEBORAH SANT'ANNA, NP is an individual residing in the State of Texas, who may be served wherever she may be found.

14. DEFENDANT MELISSA JARRETT is an individual residing in the State of Texas, who may be served wherever he may be found.

### III. ADDITIONAL FACTS

15. On or about March 22, 2019, Plaintiff was arrested for robbery that allegedly took place in McLennan County. Plaintiff was ultimately declared innocent of this charge and it was dropped following a period of pre-trial detention.

16. On or about May 1, 2019, Plaintiff was transferred to McLennan County Jail from Montgomery County Jail. McLennan County performed an intake screening when Plaintiff arrived at McLennan County Jail. The Intake and Receiving Screening noted the prescribed medications that Plaintiff possessed when he arrived at McLennan County, which included Depakote and Seroquel. As made clear by the Jail Intake Screening, Defendants were made subjectively aware of Plaintiff's serious medical and psychological problems, including, but not limited to, depression, bipolar disorder 1, anxiety, schizophrenia, history of abuse, and suicide attempts.

17. Moreover, the Jail Intake Screening noted that Plaintiff informed McLennan County, when asked if he hears noises and voices other people don't seem to hear, that he does hear them "when not on [his] meds."

18. All Defendants were subjectively and actually aware of Plaintiff's mental state and medical and psychological issues. In addition to the above intake and subsequent evaluations, the Magistrate Judge in McLennan County received notice pursuant to the Texas Rules of Criminal

Procedure, Article 16.22 - Early Identification of Defendant Suspected of Having Mental Illness or Mental Retardation.

19. On or about May 2, 2019, a determination was made to transport Plaintiff to Providence Hospital in McLennan County after he suffered multiple seizures. On or about May 3, 2019, Plaintiff returned to McLennan County Jail from the hospital. Defendant Loftis was notified thereafter that there were no new orders from the hospital as a result of Plaintiff's admission thereto.

20. Plaintiff was sent again to the jail's medical ward on or about May 13, 2019 due to maintenance working on cells and was thereafter returned, with Defendant Loftis "releasing [Plaintiff] for no medical holds."

21. On or about May 13, 2019, Plaintiff received a Psychiatric Evaluation by Defendant Sant'Anna. The Psychiatric Evaluation by Defendant Sant'Anna noted, among other things, Plaintiff's Psychiatric History (including three past suicide attempts), History of Abuse/Trauma, Current Medications (including Depakote and Seroquel), Medical Problems (including seizures, schizophrenia, bipolar disorder), Delusions, and Auditory Hallucinations. The Psychiatric History section of the Psychiatric Evaluation also noted that Plaintiff stated the following: "I am [on] my medication I am good, when I am not on my meds I get in bad shape." Following the Psychiatric Evaluation, Defendant Sant'Anna did not change his current medications.

22. On or about May 14, 2019, Defendant Loftis changed Plaintiff's Depakote from "500mg TID to 750mg BID."

23. Then, on or about May 16, 2019, Plaintiff was brought to medical ward at the jail due to looking pale and kept in Medical Segregation / Observation. On that date, Defendant Loftis changed Plaintiff's medication, including, but not limited to, placing Plaintiff's Depakote medication on hold – meaning it was entirely denied him.

5

24. Defendant Loftis ordered the abrupt cessation of Plaintiff's Depakote and Seroquel (medications that he had been prescribed and been taking for years to treat his medical conditions) despite having actual knowledge of his longstanding psychological condition and Plaintiff's need for the medication she was discontinuing. Defendant Loftis took this action while also being aware that Plaintiff had been on this medication for approximately six years. Plaintiff was told that the medication was too expensive. It is a policy and custom of the Defendants not to prescribe or give jail inmates Depakote and other medications due to the cost (the foregoing allegation is specifically identified by Plaintiff under FRCP 11 (b)(3), as likely to have evidentiary support after a reasonable opportunity for further investigation and/or discovery in this case).

25. On or about May 17, 2019, Defendant Loftis lowered Plaintiff's medication dose of Seroquel from 400mg to 200mg.

26. On or about May 18, 2019, his medication being altered and withdrawn entirely, two separate Medical Notes detail that Plaintiff's mental state had already began to worsen. Despite such, Defendant Loftis gave no new orders based on those reports.

27. On or about June 3, 2019, Plaintiff was taken back to the medical ward to have his head and hand examined. Plaintiff complained that his hand was broken, but he was denied and refused an X-Ray.

28. Also on or about June 3, 2019, Plaintiff was placed in the Emergency Restraint Cell ("ERC") "for his own safety per medical because of his strange behavior and him also saying he had taken about twenty of his blood thinner pills and [was] seeing snakes." On the same day, McLennan County Officer Peyton Drummond reported that he heard Plaintiff say that he wanted to hurt himself. Officer Lawrence Brown also reported that "[Plaintiff] struck his head against the wall attempting to harm himself." At this point, Plaintiff had been off his long-standing and required medication for approximately 2 weeks.

29. During this period of time, it had become known that the original charge for which Plaintiff had been arrested was unfounded – i.e. Plaintiff was by then known to be completely innocent. However, instead of being released, Plaintiff was charged with another offense which was directly attributable to his being taken off his medications. On or about June 3, 2019, Plaintiff received a new charge of Harassment of Public Servant for allegedly cursing and spitting at a nurse. This charge was ultimately dropped due to information provided by healthcare provider explaining that his conduct was the result of his longstanding healthcare issues and was not some criminal act.

30. Nevertheless, after June 3, 2019, Plaintiff continued to complain about his hand injury to McLennan County Jail and medical staff, including Defendants, proffering that his hand was fractured or broken; however, Plaintiff still was refused an X-Ray for his hand.

31. Plaintiff repeatedly sought help and medical care, but his pleas were basically ignored. For instance, on or about June 5, 2019, Plaintiff complained to McLennan County Jail and medical staff about Defendant Loftis taking him off his medications and that he had not seen a professional psychiatrist. The next day, on or about June 6, 2019, Plaintiff filed a grievance against medical staff for changing his medication doses (specifically Depakote and Seroquel) and complaining of the injury to his hand.

32. Finally, following the grievance, on or about June 7, 2019, Defendant Loftis re-started Plaintiff's Depakote, but at a lower dose than historically prescribed. At this point, Plaintiff had been entirely deprived of his medication since it was withdrawn back on or about May 16th.

33. On or about June 8, 2019, McLennan County Jail and medical staff, including Defendants were again presented with Plaintiff's complaint that his hand was fractured and by and before this point he was unable to close his hand. Thereafter, an X-Ray was finally ordered. However, despite Plaintiff's consistent complaints regarding his hand and despite the order for an X-Ray,

7

Plaintiff did not receive an actual X-Ray until June 10, 2019. The X-Ray revealed that his hand was indeed fractured, just as Plaintiff had been maintaining.

34. On or about June 12, 2019, Defendant Sant'Anna performed a Follow-Up Psychiatric Evaluation on Plaintiff. The Follow-Up Psychiatric Evaluation noted that Plaintiff's condition had continued to worsen. Defendant Sant'Anna specifically noted that Plaintiff was depressed, hearing voices, had a recent episode of anger, and was feeling out of control. It should be recalled that Defendants were also aware of Plaintiff's prior history of suicidal activity.

35. As a result of the Follow-Up Psychiatric Evaluation by Defendant Sant'Anna, Plaintiff's medication dose of Seroquel was increased.

36. During and after June 2019, Plaintiff was only being incarcerated because of the incident with the nurse referenced above, which transpired directly because of his medical condition brought on by Plaintiff's medication being abruptly denied to him. Unfortunately, as a result of Defendants' individual and collective actions, Plaintiff's wrongful confinement led to a sexual assault.

37. On or about July 6, 2019, McLennan County Jail staff were advised that Plaintiff had been threatened by another inmate. The following day or days, Plaintiff reported having been sexually assaulted by that inmate. With knowledge of this information, Defendant Garrett caused Plaintiff to be returned to his cell.

38. On July 8, 2019, Defendant Jarrett, regional manager for CorrHealth for the McLennan County Jail, conducted an evaluation of Plaintiff. Plaintiff reported having received threats of harm if he did not pay money or provide sexual favors from another inmate. Nevertheless, that afternoon, while Defendant Barrientos was Sergeant on Duty and Defendant Garrett Corporal on Duty, Plaintiff was returned to his cell where he attempted suicide, the inevitable result of Defendants' gross inattention to and deliberate indifference of Plaintiff's known medical needs. Defendant Barrientos was also Sergeant on Duty at the time the sexual assault of Plaintiff was reported.

39. McLennan County failed to properly train and supervise its jail guards and personnel and failed to implement practices and customs which led to harm to Plaintiff.

40. Additionally, the health care providers, CorrHealth and McLennan County, acting through their respective employees, agents or servants (including the named Defendants herein) in the course and scope of their employment and authority, failed to render adequate medical and mental health care to Plaintiff. Although known to be a substantial suicide risk, he was not provided adequate care, follow up care and monitoring.

41. In addition to the pattern of conduct demonstrated by Plaintiff's pre-trial detention, McLennan County has a reported longstanding history of neglectful medical care for inmates and retaliatory firing of medical personnel for reporting neglectful medical care for inmates, including inadequate health care staffing at the jail, improper dispensing and disposing of drugs, missing narcotics and failure by jail staff to follow doctor's orders, which have produced illegal and dangerous conditions. The foregoing allegations are specifically identified by Plaintiff under FRCP 11 (b)(3), as likely to have evidentiary support after a reasonable opportunity for further investigation and/or discovery in this case.

## IV. CAUSES OF ACTION

**Count 1 – Fourteenth Amendment: Due Process**
**(Against All Defendants)**

42. Plaintiff incorporates by reference all of the preceding paragraphs.

43. All of the above individually named Defendants were acting under color of state law and, therefore, are liable under 42 U.S.C. § 1983, 1988. Defendants are liable under Section 1983 because they deprived Plaintiff of constitutional rights provided by federal law that occurred under color of state law and were caused by a state actor. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 636 (5th Cir. 1996) (*en banc*); *Flores v. County of Hardeman*, 124 F.3d 736, 738 (5th Cir. 1997).

44. Plaintiff had a right under the Fourteenth Amendment to the United States Constitution while incarcerated to have reasonable medical care and to be free from deliberate indifference to his medical and mental health needs. Defendants, together and individually, had subjective knowledge of a substantial risk of harm to Plaintiff, but responded with deliberate indifference to that risk. Defendants additionally had subjective knowledge that Plaintiff was a substantial suicide risk, but showed deliberate indifference to that risk by failing to take reasonable measures to abate it. In fact, Defendants exacerbated the risk by ignoring Plaintiff's serious medical needs.

45. McLennan County, Barrientos and Garrett each had subjective knowledge of Plaintiff's serious medical needs, the impact of alteration of his medication, the physical injuries he received including a broken hand which they ignored, history of sexual abuse trauma, the threats of and eventual sexual assault of Plaintiff and the suicide risk. Defendants responded with deliberate indifference to these risks of substantial harm to Plaintiff and Plaintiff's substantial suicide risk. Defendants acted to deny Plaintiff of his basic human needs. There was a pervasive pattern of serious deficiencies in providing for Plaintiff's basic human needs.

46. Likewise, CorrHealth, Loftis, Sant'Anna and Jarrett each had subjective knowledge of Plaintiff's serious medical needs, the impact of alteration of his medication, the physical injuries he received including a broken hand which they ignored, history of sexual abuse trauma, the threats of and eventual sexual assault of Plaintiff and the suicide risk. Defendants responded with deliberate indifference to these risks of substantial harm to Plaintiff and Plaintiff's substantial suicide risk. Defendants acted to deny Plaintiff of his basic human needs. There was a pervasive pattern of serious deficiencies in providing for Plaintiff's basic human needs.

47. Defendant McClennan County, Texas acted as a matter of policy, practice, custom and/or procedure whereby it deprived inmates of necessary medication on the basis of cost.

48. Defendants' collective subjective deliberate indifference and acts resulted from a municipal policy or custom adopted or maintained with objective deliberate indifference to Plaintiff's constitutional rights.

49. The foregoing allegations are specifically identified by Plaintiff under FRCP 11 (b)(3), as likely to have evidentiary support after a reasonable opportunity for further investigation and/or discovery in this case.

### Count 2 – Negligence of Defendants

50. Alternatively and additionally, the following identified Defendants' actions constitute actionable medical negligence under Chapter 74 of the Civil Practice and Remedies Code.

51. **Negligence of Defendant Loftis.** On the occasion in question in this case, Defendant had a duty under Texas law to exercise ordinary care as a reasonable and prudent physician's assistant and Defendant fell below the reasonable, prudent and accepted standards of medical care in the course of providing diagnosis, assessment, care, treatment and surgery to and/or for Plaintiff. Specifically, Defendant Loftis:

> A. Negligently ceased Plaintiff's medications;
>
> B. Negligently failed to diagnose and treat the condition or refer Plaintiff to an appropriate specialist; and
>
> C. Negligently supervised Plaintiff.

52. **Negligence of Defendant Jarrett.** On the occasion in question in this case, Defendant had a duty under Texas law to exercise ordinary care as a reasonable and prudent healthcare provider and Defendant fell below the reasonable, prudent and accepted standards of medical care in the course of providing diagnosis, assessment, care, treatment and surgery to and/or for Plaintiff. Specifically, Defendant Jarrett:

A. Negligently failed to diagnose and treat the condition or refer Plaintiff to an appropriate specialist; and

B. Negligently supervised Plaintiff.

C. Negligently supervise and train those under her supervision regarding prescribing and treatment decisions related to psychiatric medications and medical care and failed to adequately supervise and train those individuals and contracted personnel.

53. **Negligence of Defendant Sant'Anna.** On the occasion in question in this case, Defendant had a duty under Texas law to exercise ordinary care as a reasonable and prudent nurse practitioner and Defendant fell below the reasonable, prudent and accepted standards of medical care applicable in the course of providing diagnosis, assessment, care, treatment and surgery to and/or for Plaintiff. Specifically, Defendant Sant'Anna.:

A. Negligently ceased Plaintiff's medications;

B. Negligently failed to diagnose and treat the condition or refer Plaintiff to an appropriate specialist; and

C. Negligently supervised Plaintiff.

54. **Negligence of Defendant CorrHealth.** On the occasion in question in this case, Defendant had a duty under Texas law to exercise ordinary care as a reasonable medical provider and Defendant fell below the reasonable, prudent and accepted standards of medical care applicable in the course of providing diagnosis, assessment, care, treatment to and/or for Plaintiff. In addition, Defendant CorrHealth also had a duty to supervise and train its employees and contracted personnel regarding prescribing and treatment decisions related to psychiatric medications and medical care and failed to adequately supervise and train its employees and contracted personnel as set herein. Finally, Defendant CorrHealth is vicariously responsible for the actions of its employees and contracted personnel for diagnose, care and treatment decisions in the performance of their duties.

55. **Negligence of Defendant McLennan County.** On the occasion in question in this case, Defendant had a duty under Texas law to exercise ordinary care as a reasonable medical provider and Defendant fell below the reasonable, prudent and accepted standards of medical care applicable in the course of providing diagnosis, assessment, care, treatment to and/or for Plaintiff. In addition, Defendant McLennan County also had a duty to supervise and train its employees and contracted personnel regarding prescribing and treatment decisions related to psychiatric medications and failed to adequately supervise and train its employees and contracted personnel as set out above. Finally, Defendant McLennan County is vicariously responsible for the actions of its employees and contracted personnel for diagnose, care and treatment decisions in the performance of their duties.

## V. DAMAGES

56. As a direct and proximate result of the occurrence made the basis of this lawsuit, and as a producing result of the same, Plaintiff suffered damages in excess of the minimum jurisdiction limits of this court. Specifically, Plaintiff suffered and will suffer past and future physical pain and suffering, past and future mental anguish, past and future disfigurement, past and future medical expenses and past lost wages and loss of future earning capacity.

57. Plaintiff has sustained profound physical, mental and emotional injuries and damages that resulted from the conduct and failures of Defendants as stated above, including immense pain of mind and body, physical injury, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life. He has sustained, and will continue to sustain, a loss of enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and has incurred and will continue to incur expenses for medical, psychiatric, and psychological treatment, therapy, and counseling. Plaintiff sues Defendants for joint and several liability.

## VII. PUNITIVE DAMAGES

58. Plaintiff reincorporates the allegations set forth in the prior paragraphs as if fully restated.

59. Defendant's actions and omissions, as explained above, were done with such deliberate and reckless indifference to and disregard for the federally protected rights and safety of Plaintiff that Defendants should be held liable for exemplary damages.

## IX. ATTORNEYS' FEES

60. Plaintiff reincorporates the allegations set forth in the prior paragraphs as if fully restated.

61. Plaintiff requests award of his reasonable and necessary attorneys' fees and expenses required for him to pursue this action pursuant to 42 U.S.C. § 1988 and as otherwise authorized by any other statute or law.

## X. JURY DEMAND

62. Plaintiff requests a trial by jury in this matter as to all his claims and against all Defendants. The jury fee has been paid.

## XI. PRAYER

Plaintiff prays that Defendants be served with process and that upon trial by jury that Plaintiff have verdict and judgment against Defendants, jointly & severally, for actual, special, and punitive damages shown and proved at trial, for pre-judgment and post-judgment interest, attorneys' fees, reasonable costs and expenses incurred in the prosecution of this action, costs of court, and for all other relief at law and in equity to which he is entitled.

Respectfully submitted,

/s/ Randall Kallinen

RANDALL L. KALLINEN
Texas Bar No. 00790995
KALLINEN LAW PLLC
511 Broadway Street
Houston, Texas 77012
Telephone: (713) 320-3785
Facsimile: (713) 893-6737
AttorneyKallinen@aol.com

MASON VANCE DUNNAM
State Bar No. 24108079
masondunnam@dunnamlaw.com
JIM DUNNAM
State Bar No. 0658010
jimdunnam@dunnamlaw.com
DUNNAM & DUNNAM LLP
4125 West Waco Drive
Waco, TX 76714-8418
Telephone (254) 753-6437
Facsimile (254) 753-7434

DAVID W. DUMAS
State Bar No. 06200990
david@daviddumaslawfirm.com
DEREK W. DUMAS
State Bar No. 24087452
derek@daviddumaslawfirm.com
DUMAS LAW FIRM, PC
425 Austin Avenue, 22nd Floor
Waco, Texas 76701
Telephone: (254) 424-0408
Facsimile: (254) 776-8555
david@daviddumaslawfirm.com

ATTORNEYS FOR PLAINTIFF