**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **KENNETH GOFF (AKA JOHN HERRINGTON),** | § | |
| **Plaintiff,** | § | |
| | § | **C.A. NO. 6:21-CV-00494-ADA-JCM** |
| **v.** | § | |
| | § | |
| **MCLENNAN COUNTY, et al.,** | § | |
| **Defendants.** | § | |

**REPORT AND RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE**

**TO:   THE HONORABLE ALAN D ALBRIGHT,
        UNITED STATES DISTRICT JUDGE**

This Report and Recommendation is submitted to the Court pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b), and Rules 1(f) and 4(b) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. Before the Court is Defendant McLennan County's Motion for Summary Judgment (ECF No. 58); Defendants CorrHealth, LLC, Danita Loftis, Melissa Jarrett, and Deborah Sant'anna's Motion for Summary Judgment (ECF No. 59), Plaintiff's Response (ECF No. 76), Defendant McLennan County's Reply (ECF No. 80), and Defendants CorrHealth, LLC, Danita Loftis, Melissa Jarrett, and Deborah Sant'anna's Reply (ECF No. 81). For the following reasons, the Court **RECOMMENDS** Defendants' Motions be **GRANTED IN PART** and **DENIED IN PART**.

## I.      BACKGROUND

Plaintiff Kenneth Goff sued Defendants McLennan County, CorrHealth LLC, Joel Barrientos, Billy Garrett, Danita Loftis, Deborah Sant'anna, and Melissa Jarrett for negligence and violations of his constitutional rights under 42 U.S.C. § 1983. Pl.'s 1st Am. Compl. (ECF

No. 21) at 11–15. The Court dismissed Goff's claims against Defendant Barrientos and Goff's negligence claims against McLennan County. R. & R. (ECF No. 34) *adopted at* ECF No. 37.

In the spring of 2019, Goff was arrested for aggravated armed robbery and confined in the McLennan County Jail. Pl.'s Resp., Ex. A (ECF No. 76-1) at 2. At the time of his arrest, Goff was taking Depakote and Seroquel, among other prescription medications, to address his seizures, bipolar disorder, schizophrenia, and depression. *Id.* Goff has a long history of medical and mental health issues and, consequently, had been taking Depakote and Seroquel for approximately six years prior to his confinement in McLennan County Jail. *Id.*

The jail was familiar with Goff's history of mental health issues, as Goff was previously detained there in 2018 and attempted suicide with a razor blade by slicing his neck, throat, chest, and stomach at the jail. Pl.'s Resp., Ex. F at 384–85; Pl.'s Resp., Ex. A at 2. Reports from the jail's correctional staff noted that he got very angry and tried to cut out his own pacemaker because he felt like the staff was not paying attention to him. Pl.'s Resp., Ex. F at 384–85.

When Goff arrived at McLennan County Jail in 2019, jail officials performed an intake screening. Pl.'s Resp., Ex. A at 2. During his intake screening, jail officials noted the prescription medications that Goff had with him upon arrival, which included Depakote and Seroquel. *Id.* During his intake screening, when asked if he hears noises and voices other people do not seem to hear, Goff stated that he does when he is off his medications. *Id.*; Pl.'s Resp., Ex. C at 18. Following his intake screening, the Magistrate Judge in McLennan County received notice of Goff's mental health status pursuant to the Texas Rules of Criminal Procedure, Article 16.22— "Early Identification of Defendant Suspected of Having Menta Illness or Mental Retardation." Pl.'s Resp., Ex. A at 2; Pl.'s Resp., Ex. C at 54.

On May 2, 2019, Goff was transported from the jail to Providence Hospital after suffering multiple seizures and was returned to the jail the next day. Pl.'s Resp., Ex. A at 3. Ten days later, the jail sent Goff to the medical ward where Defendant Sant'anna, a CorrHealth employee, performed a Psychiatric Evaluation of Goff. Pl.'s Resp., Ex. O at 326. Sant'anna noted that Goff had a history of mental health issues including three past suicide attempts, a history of prescription drug use, seizures, schizophrenia, bipolar disorder, delusions, and auditory hallucinations. Pl.'s Resp., Ex. A at 3. Following Goff's psychiatric evaluation, Sant'anna did not change his current medications. Pl.'s Resp., Ex. T at 454. Sant'anna noted "after further thinking [she] decided not to change the patient [sic] current medication. Depakote level pending," in Goff's medical chart. *Id.*

A day after his psychiatric evaluation, Defendant Loftis, a CorrHealth employee, changed Goff's Depakote from 500mg TID to 750mg BID. *Id.* Then on May 16, 2019, Goff was brought to the medical ward and kept in medical segregation for observation because he looked pale. *Id.* At that time, Loftis placed a hold on Goff's Depakote prescription. *Id.* The next day, Loftis lowered Goff's Seroquel prescription from 400mg to 200mg. *Id.*

Sometime in May 2019, Goff began having thoughts of suicide. Pl.'s Resp., Ex. A at 4. After his prescriptions had been altered for roughly two weeks, Goff was placed in an emergency restraint cell at the jail "for his own safety per medical" due to his strange behavior, including taking twenty of his blood thinner pills and seeing snakes. *Id.* That same day, McLennan County Officer Peyton Drummond reported that he heard Goff say that he wanted to harm himself. *Id.* Another officer reported that Goff struck his head against the wall to harm himself. *Id.* In June 2019, Sant'anna performed a follow-up psychiatric evaluation of Goff. *Id.* She noted that Goff's condition had worsened, specifically noting that Goff was depressed, hearing voices, had a recent

episode of anger, and was feeling out of control. *Id.* at 6. After his follow-up evaluation, Sant'anna increased Goff's Seroquel prescription, however, the amount Sant'anna prescribed was still less than the amount Goff had been taking for the past six years. *Id.* Goff complained to jail officials that his medications were being withheld. *Id.* Goff's then-attorney specifically informed Officer Barrientos that Goff was not receiving the psychiatric medication that he needed. *Id.*

In July 2019, while still confined at the jail, Goff was sexually assaulted by another inmate. *Id.* Goff reported to jail officials that he was threatened by another inmate. *Id.* The next day, Goff reported that he was sexually assaulted by that inmate because Goff refused to pay money or provide sexual favors to that inmate. *Id.* Defendant Jarrett, regional manager for CorrHealth, conducted an evaluation of Goff and found physical evidence that Goff was sexually assaulted. *Id.*

Following that incident, Goff was not placed on any classification status or noted as a suicide risk. *Id.* at 7; Cnty.'s Mot. at ¶ 20, Ex. A at 0056–57; Ex. B ¶ 5. Instead, Goff was returned to his cell where he accessed a razor blade with which he used to attempt suicide. Pl.'s Resp., Ex. A at 7. During this time, McLennan County contracted medical and mental healthcare to CorrHealth. Pl.'s Resp., Ex. E. This included mental health treatment and emergencies. *Id.*, Pl.'s Resp., Ex. H at 21:9–22:5; 34:2–12.

In addition to suffering from severe mental health issues, Goff suffered from a number of medical conditions. *See generally, e.g.,* Pl.'s Resp., Ex. A. On June 4, 2019, Goff was taken to the medical ward to have his head and hand examined after complaining of pain. Pl.'s Resp., Ex. D at CTY 00007. Goff believed that his hand was broken, but an x-ray was not performed that day. *Id.*; Pl.'s Resp., Ex. A at 5. Goff continued to complain of his hand injury to jail personnel.

4

Pl.'s Resp., Ex. D at CTY 0007–09; Pl.'s Resp., Ex. A at 5. On June 6, 2019, Goff filed a grievance against medical staff due to the treatment of his hand injury, or alleged lack thereof, and because of the change in his prescriptions. Pl.'s Resp., Ex. A at 5. Two days later, Loftis ordered an x-ray of his hand and used buddy tape to treat the injury. *Id.* at 5–6. An x-ray, taken on June 10, 2019, revealed that Goff's hand was fractured. *Id.* at 6; Pl.'s Ex. Q.

Similarly, Goff made several complaints about his pacemaker. Pl.'s Resp., Ex. A at 6; Pl.'s Resp., Ex. D at CTY 00028. When Goff reported issues with his pacemaker through the jail's kiosk system, his messages were sent to CorrHealth to address. *See e.g.*, Pl.'s Resp., Ex. D at CTY 00028. Loftis examined Goff after he reported that the atrial wire on his pacemaker was broken. Cnty.'s Mot., Ex. A at 25.

Goff alleges that (1) the continued failure or delay in treating his hand injury and pacemaker issues, (2) the defendants' failure to protect him from an attempted suicide, and (3) the County's failure to train and supervise jail guards resulted in a violation of his Fourteenth Amendment Due Process rights. Pl.'s 1st Am. Compl. at ¶¶ 46–52. Further, Goff alleges in the alternative that the Corrhealth Defendants were negligent in providing medical care under Chapter 74 of the Texas Civil Practice and Remedies Code. *Id.* at ¶¶ 54–58. Given the history of this case, the undersigned will summarize the claims that are the subject of this Report & Recommendations. Goff's live claims are as follows:

(1) Section 1983 claims against all Defendants for deliberate indifference to his medical and mental health;

(2) Section 1983 claims against all Defendants for failure to protect him from attempting suicide;

(3) Section 1983 claims against the County for failure to train and supervise jail guards and personnel;

(4) Section 1983 claims against the County for implementing practices and customs that were the moving force behind Goff's injuries and attempted suicide; and

(5) Medical negligence claims under Chapter 74 of the Texas Civil Practice and Remedies Code against all Corrhealth Defendants.

*Id.* at ¶¶ 46–58. Defendants move for summary judgment in their favor as to each of Goff's claims against them. *See generally* Cnty.'s Mot.; *see also* CorrHealth Defs.' Mot.

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is not genuine if the trier of fact could not, after an examination of the record, find for the nonmoving party. *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 578 (1986). The moving party bears the burden of showing that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). That said, the moving party can satisfy its burden either by producing evidence negating a material fact or pointing out the absence of evidence supporting a material element of the nonmovant's claim. *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991). Throughout this analysis, the Court must view the evidence and all factual inferences in a light most favorable to the party opposing summary judgment. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

## III.    ANALYSIS

As an initial matter, the Court will begin by addressing the CorrHealth Defendants' objections to Goff's summary judgment evidence. The CorrHealth Defendants raise several objections in their reply to Goff's response.[1] CorrHealth Defs.' Resp. in Supp. (ECF No. 81) at

---

[1] The CorrHealth Defendants object to specific statements and opinions made by Goff and Dr. Oberg in their respective declarations attached to Goff's Response (ECF No. 76) as Exhibits A and B. CorrHealth Defs.' Resp. in Supp. at 7–10. The CorrHealth Defendants do not object to the entirety of Exhibits A or B. *Id.* As such, the

7–10. Goff did not respond to any of their objections. Accordingly, the Court **SUSTAINS** the CorrHealth Defendants' objections to Goff's summary judgment evidence as unopposed. *See Garcia v. Roy's Trucks & Equip., Inc.*, No. 3:17-cv-0950-C, 2018 WL 6338364, at *3 (N.D. Tex. Aug. 24, 2018) (sustaining objections to summary judgment evidence where plaintiff did not respond to defendant's objections); *Johnson v. Cameron Int'l Corp.*, No. H-16-262, 2017 WL 3658901, at *3 (S.D. Tex. Aug. 24, 2017) (sustaining defendant's objection to plaintiff's summary judgment evidence where plaintiff failed to respond); *Abdelhak v. City of San Antonio*, No. SA-09-CA-804-FB, 2011 WL 13124298, at *6 (W.D. Tex. Dec. 6, 2011) ("As plaintiff did not respond to [defendant's] objections, the [defendant's] objections may be sustained as unopposed.").

### A. Goff's Section 1983 Claims

Section 1983 creates a private right of action for redressing the violation of federal law by those acting under color of state law. 42 U.S.C. § 1983; *see also Dist. Atty's Office for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 65 (2009); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 683 (1978). "Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates. Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citations and internal quotation marks omitted) (quoting *Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989)).

Goff brings his § 1983 claims against all defendants based on their alleged violations of Goff's Fourteenth Amendment rights while he was detained in the McLennan County Jail. Pl.'s Am. Compl. at ¶ 45–53. Goff's claims implicate the acts and omissions of both the individual

---

undersigned considers only the portions of the exhibits that the defendants did not specifically object to when analyzing the motions for summary judgment before the Court.

defendants, CorrHealth, and the County, as well as the jail's general conditions of confinement. Thus, the Court will consider whether Goff raises a genuine dispute of material fact with respect to the alternate theories of unconstitutional episodic acts or omissions and conditions of confinement. Importantly, Goff's rights as a pretrial detainee, are "at least as great as the Eight Amendment protections available to a convicted prisoner." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 649 (5th Cir. 1996) (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).

At the outset, the County argues that it is not liable for any of Goff's claims that are predicated on the alleged conduct of CorrHealth LLC, Danita Loftis, Deborah Sant'anna, or Melissa Jarrett (the "CorrHealth Defendants"). Cnty.'s Mot. at 14. The County further contends that Goff cannot base any County liability on Joel Barrientos's alleged conduct because the Court dismissed all of Goff's claims against Barrientos. *Id.* at 14–15.

McLennan County has a duty to provide pretrial detainees adequate medical care. *See Kent v. Collin Cnty.*, No. 4:21-CV-412-SDJ, 2022 U.S. Dist. LEXIS 65317, at *15–18 (E.D. Tex. Mar. 29, 2022) (citing *Hare*, 74 F.3d at 638–39). This is true whether McLennan County contracts its health care responsibilities or provides them itself. *Id.* at 15. (citing *West v. Atkins*, 487 U.S. 42, 56 (1988) ("Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody[.]")). While CorrHealth provided medical care to McLennan County's detainees at the time of Goff's alleged injuries, McLennan County is liable for any constitutional deprivations caused by CorrHealth's policies, practices, or customs, but only to the extent that McLennan County delegated policymaking authority to CorrHealth. *See id.* at *16. Further, so long as Goff presents summary judgment evidence raising a fact issue with respect to Barrientos's conduct, the County remains

liable for such conduct. *See Slocum v. City of Cleveland Heights*, No. 1:14-CV-00532, 2014 U.S. Dist. LEXIS 83700, at *10 (N.D. Ohio June 19, 2014) ("[T]he Supreme Court has held that municipalities are "persons" subject to suit under § 1983. Thus, Plaintiffs are not required to name an individual in their complaint in order to obtain injunctive relief against the [municipality].") (citing *Monell*, 436 U.S. at 690).

### i.    Goff's Conditions-of-Confinement Claim Against the County

Conditions-of-confinement claims are "challenges to the general conditions, practices, rules, or restrictions of pretrial confinement." *Sanchez v. Young Cnty., Tex.*, 956 F.3d 785, 791 (5th Cir. 2020) (internal quotations omitted). Some established examples of condition-of-confinement claims include the number of bunks in a cell, television privileges, and overcrowding. *Scott v. Moore*, 114 F.3d 51, 53 n. 2 (5th Cir. 1997). An episodic act or omission case, by contrast, involves a scenario in which an actor is interposed between the detainee and the municipality, such that the "detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission." *Id.* at 53. Failure to train claims, for example, are episodic act claims. *Sanchez*, 956 F.3d at 791.

In a condition-of-confinement claim, the plaintiff must prove that the condition of confinement is not reasonably related to a legitimate, non-punitive governmental objective. *Scott*, 114 F.3d at 53. In the Fifth Circuit, a conditions-of-confinement claim "requires no showing of specific intent on the part of the [municipality]." *Sanchez v. Young City*, 866 F.3d 274, 279 (5th Cir. 2017). In an episodic act or omission claim, on the other hand, the plaintiff must prove that "the predicate episodic act or omission resulted from a municipal custom, rule, or policy adopted with objective deliberate indifference to the detainee's constitutional rights." *Id.* at 54 (citing

*Grabowski v. Jackson Cnty. Pub. Defenders Office*, 79 F.3d 478, 479 (5th Cir. 1996) (per curiam).

The County argues that Goff's claims are episodic act claims, rather than conditions-of-confinement claims. The Fifth Circuit has held that a § 1983 lawsuit over a sexual assault "could not be classified as a conditions claim because the plaintiff did not suffer from that alleged unlawful condition, but from an individual's specific act, the assault, committed on a single occasion." *Shepherd v. Dall. Cnty.*, 591 F.3d 445, 453 (5th Cir. 2009) (citing *Scott*, 114 F.3d at 53–54). In *Sibley*, the Fifth Circuit "held that the lawsuit of a mentally disturbed detainee who has been allowed to pluck out his eyeballs while left alone and was shackled was properly classified as an episodic act or omission because, again, the plaintiff's injuries were caused by specific alleged acts or omissions. *Id.* (citing *Sibley v. Lemaire*, 184 F.3d 481, 487–88 (5th Cir. 1999)).

Goff's claim, by contrast, does not implicate the acts or omissions of individuals but rather the jail's system of providing medical care and prescribing medications to inmates with a history of mental health issues. *See Shepherd* 591 F.3d at 453 (holding that where plaintiff alleged that a prison's inadequate healthcare system directly led to his stroke, plaintiff's allegations did not implicate the acts or omissions of individuals by the prison's system of providing medical care to inmates with chronic illness). Goff alleges that the jail's treatment and medical care provided to inmates with a history of mental health issues was, at the time of Goff's attempted suicide, grossly inadequate due to its policies and customs, and that these deficiencies caused his injury. *See* Pl.'s 1st Am. Compl.

Goff has provided sufficient evidence to establish a conditions-of-confinement claim at the summary judgment stage. A plaintiff in a conditions-of-confinement case must show a

10

"pervasive pattern of serious deficiencies in providing for his basic human needs." *Shepherd*, 591 F.3d at 454. Goff's claims implicate the County's system of providing medical care and treatment to potentially suicidal pretrial detainees. Goff has "identified the policies and procedures he deemed inadequate, such as policies and procedures on dispensation of medication, access to implements of self-harm, and training on specific topics." *Garcia v. Harris Cnty.*, No. 4:23-CV-0542, 2024 U.S. Dist. LEXIS 53464, at *14 (S.D. Tex. Mar. 26, 2024).

Specifically, Goff's claims that the County's *de facto* customs or policies (1) against prescribing or giving detainees suffering from mental health issues Depakote and other medications due to cost, (2) limiting lab work such as x-rays and medical and mental health referrals to outside providers, and (3) allowing detainees with a history of mental health issues and suicide attempts to access razor blades were the moving force behind Goff's injuries. Pl.'s Resp. at 10, 26; *see also Valle v. City of Hous.*, 613 F.3d 536, 541–42 (5th Cir. 2010) (Municipal liability under § 1983 requires proof of (1) a policy maker, (2) an official policy; and (3) a violation of a constitutional right whose moving force is the policy or custom.). For the reasons set forth below, the undersigned finds that several fact issues exist that preclude summary judgment on this claim.

Although an unlawful condition or practice is often explicit, a "formal, written policy is not required." *Montano v. Orange Cnty.*, Tex., 842 F.3d 865, 875 (5th Cir. 2016). A condition may "reflect an unstated or *de facto* policy, as evidenced by a pattern of acts or omission 'sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice." *Shepherd*, 591 F.3d at 452 (quoting *Hare*, 74 F.3d at 645). As the Fifth Circuit has noted, failure to provide adequate medication or medical treatment may be established as a policy or practice giving rise to a constitutional

violation. *See Montano*, 842 F.3d at 865 (denying summary judgment on municipal liability); *see also Shepherd*, (denying summary judgment for jail's failure over several months to provide hypertensive medication and treatment resulting in detainee's stroke).

Goff has presented evidence showing that Defendants were aware of Goff's "serious medical and psychological problems, including, but not limited to, depression, bipolar disorder 1, anxiety, schizophrenia, history of abuse, and suicide attempts." Pl.'s Resp., Ex. A, Goff Decl. at 2; Ex. O at 326. Despite this, Defendants withheld Goff's Depakote, and lowered his dosage of Seroquel, which he had been taking for almost six years to treat his schizophrenia and bipolar disorder, resulting in Goff's attempted suicide. *Id.*, Ex. J, Zold Dep., at 39:15–21.

During his intake screening, when asked if he hears noises and voices other people do not seem to hear, Goff stated that he does when not on his medications. Pl.'s Resp., Ex. A at 2. Further, Goff's psychiatric history revealed that he had attempted suicide three times before. *Id*. Goff told Sant'anna during his psychiatric evaluation that when he is on his medication he is "good," but when he is off his medications he is often "in bad shape." *Id.* Despite all of this, Defendant Loftis ordered the abrupt cessation of Goff's Depakote and reduced his Seroquel prescription, both of which he had been taking for the past six years to treat his medical conditions. *Id.*; Ex. B, Oberg Decl. at 11.

After his medications were withdrawn from him, Goff's mental health began to worsen and in May 2019, he began having thoughts of suicide. Pl.'s Resp., Ex. A at 3. Goff was later placed in an Emergency Restraint Cell "for his own safety per medical because of his strange behavior and him also saying he had taken about twenty of his blood thinner polls and [was] seeing snakes." *Id.* That same day, McLennan County Officer Peyton Drummond reported that he heard Goff saying that he wanted to harm himself. *Id.*, Ex. S, Incident R. at CTY00134. Goff

reportedly struck his head against the wall attempting to harm himself after being deprived of his long-standing and required medication for approximately two weeks. Pl.'s Resp., Ex. A at 3–4; Ex. S, Incident R. at CTY00133. After Goff filed a grievance against medical staff for changing the doses of his prescriptions, he was prescribed Depakote, but at a lower dose than historically prescribed. Pl.'s Resp., Ex. A at 4. Further, after all of these incidents and after he reported being sexually assaulted, Goff was not classified as a suicide risk. *Id.* at 6. Instead, jail officials allowed Goff to access a razor blade, which he then used in an attempt to take his own life. *Id.*

In viewing the evidence in a light most favorable to Goff, a reasonable juror could infer that the jail's conditions of confinement were grossly inadequate and therefore not reasonably related to a legitimate, non-punitive government interest. *See Shepherd*, 591 F.3d at 452 ("[I]ntent [to punish] may be inferred from the decision to expose a detainee to an unconstitutional condition"). Thus, there is a genuine dispute as to a material fact that precludes summary judgment in favor of the County on this issue.

### ii.    Goff's Episodic Act or Omission Claims Against All Defendants

Episodic acts or omissions occur where the complained-of harm is a particular act or omission of one or more officials. *Hare*, 74 F.3d at 645. To overcome summary judgment on his episodic act claim against the County and CorrHealth, Goff must raise a fact dispute as to whether (1) "County officials [or CorrHealth employees], acting with subjective deliberate indifference, violated [Goff's] constitutional rights," and (2) "the County [or CorrHealth] employees' acts resulted from a policy or custom adopted with objective indifference to [Goff's] constitutional rights." *Sanchez*, 866 F.3d at 279 n.3. "Deliberate indifference is an extremely high standard to meet but can be satisfied by a wanton disregard" for a detainee's needs. *Id.* (internal quotation marks omitted).

*Failure to Provide Medical Care with Respect to Goff's Hand and Pacemaker.* To survive summary judgment, Goff must raise a triable issue of fact that Defendants acted with deliberate indifference to his medical needs. In the medical care context, a detainee must show that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Lacy v. Shaw*, 357 F.App'x 607, 609 (5th Cir. 2009) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). For example, in *Alderson*, an inmate that had been brutally attacked by other inmates asked a prison official for medications he had been prescribed but was told by the prison official to "[m]an up" until the jail's medical staff returned after Christmas. *Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 418–22 (5th Cir. 2017).

Based on the undersigned's careful review of the summary judgment evidence before the Court, Goff cannot meet that high bar of establishing deliberate indifference with respect to his hand injury and pacemaker issues. There is no allegation, much less evidence, that Defendants purposefully treated Goff incorrectly or intended to inflict pain or harm of any kind on him. The medical documentation contained in the summary judgment record highlights the efforts medical personnel took to treat Goff while he was a detainee at the jail. *See e.g.*, Ex. H, Loftis Dep., 80:22–81:7, 82:13–89:11; Ex. 2, Dr. Llubares's Aff. (ECF No. 62-2) 4–11. The record is replete with evidence that jail officials and CorrHealth employees responded to Goff's sick calls and complaints. *See generally* Pl.'s Resp., Ex. D (ECF No. 76-1) (Goff's conversation activity history for McLennan County Jail); Ex. T at 445–463; *see also* Ex. 2, Dr. Llubares's Aff. at 4–11 (summarizing Goff's conversation activity history for McLennan County Jail). As a matter of law, deliberate indifference is not established when "medical records indicate that [the plaintiff]

14

was afforded extensive medical care by prison officials. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

Here, the summary judgment evidence reveals that Defendant Loftis ordered two x-rays of Goff's hand and treated his finger with buddy tape. Loftis Dep., 82:13–89:11. Not only did Goff receive treatment and medical evaluation, his complaints about his hand injury and his pacemaker were addressed by jail officials. *See* Pl.'s Resp., Ex. T. When Goff initially complained of his hand fracture and requested a bottom bunk, jail staff promptly assigned him to a bottom bunk. *Id.* at 80. When Goff complained of his hand injury on June 5, 2019, he was added to the sick call list hours later. *Id.* When Goff later requested Tylenol or ibuprofen for his injured hand, a jail official added Goff to the sick call list and Goff was promptly seen by Defendant Loftis. *Id.* at 84; Ex. 2, Dr. Llubares's Aff. at 4–11. Further, when Goff complained about his pacemaker, he was added to the Jail's sick call list. Ex. 2, Dr. Llubares's Aff. at 4–11.

The gravamen of Goff's complaint is that the CorrHealth Defendants did not provide him with the proper medical treatment and failed to timely treat his hand injury and pacemaker complaints. Pl.'s Resp., Ex. A at 5–6. While this may establish a medical malpractice claim, it is far from what is required to create a fact issue on deliberate indifference. Deliberate indifference cannot be inferred from an official's mere failure to act reasonably. *Petzold v. Rostollan*, 946 F.3d 242, 250 (5th Cir. 2019) ("[B]ecause medical treatment was provided, even if it was negligent, disagreed-with, and based on a perfunctory and inadequate evaluation, it was not denied. Under governing precedent, imperfect treatment does not equal denied treatment.") (footnote omitted); *Stewart v. Murphy*, 174 F.3d 530, 534–35 (5th Cir. 1999) (explaining that active treatment of a medical condition is not deliberate indifference).

At most, the summary judgment evidence establishes that Goff received perfunctory and potentially inadequate evaluation, but received treatment, nonetheless. Thus, the undersigned is unable to locate any evidence that establishes Defendants' wanton disregard for Goff's medical needs with respect to his hand injury or issues with his pacemaker.

_Failure to Protect Goff from His Attempted Suicide._ Both the County and CorrHealth contend that they are entitled to summary judgment in their favor because Goff fails to raise a genuine dispute as to a material fact on deliberate indifference to Goff's safety. County's Mot. at 9–10; CorrHealth Defs.' Mot. at 14. CorrHealth argues that Goff's allegations involve medical malpractice and negligence, but do not meet the standard of deliberate indifference or substantial harm. CorrHealth Defs.' Mot. at 15. CorrHealth's argument focuses on the medical judgment calls made by the CorrHealth Defendants. _Id._ CorrHealth, however, does not address Goff's claims that it ignored a substantial risk of danger to Goff with respect to his mental health following his alleged sexual assault. _Id._ at 14–16.

To state a constitutional claim for failure to protect, a plaintiff must show (1) he was subject to conditions "posing a substantial risk of serious harm" and (2) officials were deliberately indifferent to his need for protection. _Hare_, 74 F.3d at 648 (citing _Farmer_, 511 U.S. at 834). A finding of deliberate indifference requires more than mere negligence—the jail official must (1) be subjectively aware that the detainee faces a substantial risk of serious harm and (2) disregard that risk by failing to take reasonable measures to alleviate it. _Id._ at 837; _see also Hare_, 74 F.3d at 648 ("Though _Farmer_ dealt specifically with a prison official's duty under the Eight Amendment to provide a convicted inmate with humane conditions of confinement, we conclude that its subjective definition of deliberate indifference provides the appropriate standard for measuring the duty owed to pretrial detainees under the Due Process Clause."). Here, Goff is not

16

just arguing that the County and CorrHealth made a negligent (or grossly negligent) choice in failing to refer him to a mental healthcare provider for an assessment after his alleged sexual assault occurred. He is arguing that the County and CorrHealth were on notice of a substantial risk of danger to which they turned a blind eye.

As to CorrHealth, Goff alleges that CorrHealth's employees failed to refer him to a mental healthcare provider after determining that he had been sexually assaulted. Pl.'s Resp. at 7–9; Ex. A, Goff's Decl. at 2–4. As to the County, Goff's specifically alleges that, despite knowing that he wanted to harm himself, Goff was not put on suicide watch or referred to a mental healthcare provider. *Id.* Instead, he was placed in a cell where he attempted suicide by cutting himself with a razor blade that the jail allowed him to access. *Id.* at 7.

The County maintains that Goff did not appear "to be in a state of severe emotional distress, beyond being upset" about the alleged sexual assault that had just occurred. Cnty.'s Mot. at ¶ 7. The County likewise contends that, at the time Goff cut himself with a razor, "he was not on any jail classification status, nor experiencing any mental/psychological issues known to Jail staff that would have prevented him from having a disposable razor." *Id.* at 20. Therein lies the problem—despite Goff's clear state of emotional distress, the jail did not classify him as even a low suicide risk.

While suicide is inherently difficult for anyone to predict, particularly in the depressing jail setting, the Court finds it difficult to imagine a clearer indication that an individual is in a state of severe emotional distress, and therefore substantial risk of danger, than a detainee with a long history of mental health issues and suicide attempts, who was recently sexually assaulted. Especially, whereas here the detainee previously attempted suicide in a similar manner while in the jail's custody. Pl.'s Appx. (ECF No. 76-1), Ex. A, Goff's Decl., at 2. Such a situation is one in

17

which the undersigned finds it obvious that the likely consequences of inaction will be a deprivation of rights that the Fourteenth Amendment seeks to protect.

Accordingly, the undersigned finds that the County was aware of a substantial risk of danger to Goff and failed to place him on suicide watch, instead placing him in a cell where he had access to a razor blade, which he attempted to use to take his life. The summary judgment evidence establishes that CorrHealth, on the other hand, was not aware of a substantial risk of danger to Goff in failing to refer him to a mental healthcare provider. *See* Pl.'s Resp., Ex. G, Jarrett Dep. at 59:11–20 ("Q. Had you known that he had had prior suicide attempts and about his mental health history, would you have had different recommendations or additional recommendations for Mr. Goff based on this incident? . . . A. Yes, a follow-up referral to a mental health would probably have been appropriate just based on some of the history.") (unaltered from original). Thus, there is a genuine dispute as to a material fact on deliberate indifference that precludes summary judgment in favor of the County on this issue. CorrHealth, however, is entitled to summary judgment because there is no genuine dispute that CorrHealth or its employees acted with deliberate indifference to Goff's safety or medical needs.

*Failure to Train and Supervise.* Goff also asserts failure to train and supervise claims under § 1983 against the County. Pl.'s Am. Compl. at ¶ 51. Claims for failure to train or supervise are species of municipal liability claims. *Hutcheson v. Dall. Cnty.*, 994 F.3d 477, 482 (5th Cir. 2021). The "failure to train [or supervise] can amount to a policy if there is deliberate indifference to an obvious need for training [or supervision] where citizens are likely to lose their constitutional rights." *Id.* (citations omitted). To establish a failure to train or supervise claim, Goff must show that (1) the County failed to train or supervise the officers involved, (2) there is a causal connection between the alleged failure to train or supervise and the alleged violation of

Goff's rights, and (3) the failure to train or supervise constituted deliberate indifference to Goff's constitutional rights. *Id.*

Goff's response does not specifically address the County's arguments that Goff failed to raise any fact issue on his failure to train or supervise claims. *See generally*, Pl.'s Resp. Instead, Goff attached more than five hundred pages of summary judgment evidence that contains a few references to Jarrett's lack of training regarding mental health conditions. *See* Ex. G, Jarrett Dep., at 41:4–10.

This Court is not required to sift through the record in search of a genuine issue of material fact. *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 463 (5th Cir. 1996) (citation omitted). "Rule 56 does not impose a duty on the district court to sift through the record in search of evidence to support a party's opposition to summary judgment." *Id.* "Rule 56, therefore, saddles the non-movant with the duty to 'designate' the specific facts in the record that create genuine issues precluding summary judgment, and does not impose upon the district court a duty to survey the entire records in search of evidence to support a non-movant's opposition." *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996).

"The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Goff has not done so with respect to his failure to train and supervise claims. After considering the arguments raised and Goff's response or lack of response thereto, the undersigned concludes that the County is entitled to summary judgment on Goff's failure to train and supervise claims.

To establish deliberate indifference in this context, a plaintiff must demonstrate that "in light of the duties assigned to specific officers or employees[,] the need for more or different

training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). A court infers deliberate indifference "either from a pattern of constitutional violations or, absent proof of a pattern, from showing a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights." *Garza v. City of Donna*, 922 F.3d 626, 637–38 (5th Cir. 2019) (citation and internal quotation marks omitted). Here, Goff alleges that CorrHealth's staff was not adequately trained or supervised to address the health care needs of detainees and inmates suffering from mental health issues. Pl.'s 1st Am. Compl. at ¶ 51. Goff, however, has not presented evidence of a pattern of constitutional violations or single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights.

Goff offers some evidence that Jarrett did not receive mental health training or continuing education apart from the standard training she received as a nurse. *See* Ex. G, Jarrett Dep., at 41:4–10. This evidence alone, however, is not enough to allow the Court to infer that attempted suicides will recur absent mental health training or continuing education for nurses and other healthcare professionals that are contracted by the County. To the extent Goff also asserts failure to train and supervise claims against CorrHealth, CorrHealth is entitled to summary judgment in its favor for the same reasons.

In sum, the Court should **GRANT** summary judgment in favor of all CorrHealth Defendants as to Goff's § 1983 claims against them. Further, the Court should **DENY** the County's motion for summary judgment as to Goff's conditions-of-confinement claim and Goff's episodic act claim involving the County's failure to protect him from attempted suicide. The

Court should, however, **GRANT** the County's motion as to Goff's episodic act claims involving the County's failure to train, failure to supervise, and failure to provide medical care with respect to Goff's hand injury and pacemaker.

### B. Goff's State-Law Medical Negligence Claims Against the CorrHealth Defendants[2]

*Supplemental Jurisdiction.* As explained above, the Court should dismiss Goff's § 1983 claims against all CorrHealth Defendants. That said, the Court should exercise its supplemental jurisdiction over Goff's state law claims. 28 U.S.C. § 1367(c)(3) states that the "district courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction." Thus, the Court has discretion to retain or decline supplemental jurisdiction once it has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3).

In determining whether to exercise this discretion a court should look to values of judicial economy, convenience, fairness, and comity. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). No one factor is dispositive. *Id.* This case has been pending before the Court for over three years and to decline to exercise jurisdiction now would be a waste of the time and money that has already been expended by both the Court and the litigants in this matter. *See* Pl.'s Original Compl. (ECF No. 1) (filed on May 12, 2021). Declining to exercise jurisdiction and dismissing the case against the CorrHealth Defendants would also result in Goff's inability to bring suit in state court as the claims have prescribed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.251(a) ("[N]o health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is

---

[2] As previously noted, the Court dismissed Goff's medical negligence claims against the County. R. & R. (ECF No. 34) at 9–13, *adopted at* ECF No. 37.

completed."); *Kovaly v. Kuruvanka*, 497 S.W.3d 539, 544 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) ("A health care liability claim is governed by the two year statute of limitations.").

It cannot be said that this would be in the interest of fairness or comity because Goff has suffered serious injuries. Determination of whether these injuries are attributable to the CorrHealth Defendants has yet to be decided, but for this Court to decline to retain jurisdiction before making such a determination would be unjust. Thus, these factors weigh in favor of retaining jurisdiction over Goff's state law medical negligence claims against the CorrHealth Defendants.

*Causation.* The summary judgment evidence raises a genuine dispute as to a material fact on causation that precludes summary judgment in favor of the CorrHealth Defendants on this issue. Under Texas law, the elements of a medical negligence claim under Chapter 74 of the Texas Civil Practice and Remedies Code are (1) a duty to conform to a certain standard of care; (2) a failure to conform to the required standard, (3) actual injury, and (4) a causal connection between the conduct and the injury. *Hannah v. United States*, 523 F.3d 597, 601 (5th Cir. 2008); *Mariner Health Care of Nashville, Inc. v. Robins*, 321 S.W.3d 193, 205 (Tex. App.—Houston [1st Dist.] 2010, no pet.). The CorrHealth Defendants address only the fourth element of Goff's medical negligence claims. *See* CorrHealth Defs.' Mot. at 16. The CorrHealth Defendants argue only that there is no evidence of a causal connection between their actions and Goff's alleged injuries. *Id.*

The undersigned finds that the CorrHealth Defendants have not established that they are entitled to judgment as a matter of law here. Goff made specifically allegations as to each defendant's negligent acts or omissions. Pl.'s Am. Compl. at ¶ 55–58. The CorrHealth Defendants do not address these allegations. Instead, the CorrHealth Defendants contend only

that they are entitled to summary judgment because "Goff did not experience any unprovoked increase in seizure frequency after his release." CorrHealth Defs.' Mot. at 17. Goff's negligence claims, however, are not limited to his seizures. See Pl.'s 1st Am. Compl. at ¶ 55–58. In fact, Goff alleges only that Defendant Sant'anna and Loftis were negligent in ceasing his medications. *Id.* at ¶ 55A., 57A..

Despite this, the CorrHealth Defendants do not address the causal relationship between their alleged negligent acts or omissions and any of the other injuries Goff specifically alleges. CorrHealth Defs.' Mot. at 18. For instance, they do not address whether the failure to immediately x-ray and treat Goff's finger caused the injuries he alleges or whether the decision to withdraw Goff from Depakote caused his declining mental health and attempted suicide. *Id.* As noted above, while perfunctory and inadequate medical treatment is not sufficient to establish deliberate indifference, such treatment may constitute negligence. *See Petzold*, 946 F.3d at 250–51 ("But, because medical treatment was provided, even if it was negligent, disagreed-with, and based on a perfunctory and inadequate evaluation, it was not denied.").

While the Court notes that CorrHealth's expert, Dr. Darshan N. Shah, opined that the treatment Goff received for his hand injury was "well within the standard of care at every phase," the affidavit merely sets out conclusory opinions. CorrHealth Defs.' Mot., Ex. 3 (ECF No. 59-7) at ¶ 15. Expert affidavits cannot be used in this way to create issues of material fact at the summary judgment stage. *See Hayter v. City of Mt. Vernon*, 154 F.3d 269, 274 (5th Cir. 1998) (holding that "affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment" and that "without more than credentials and subjective opinion, an expert's testimony that it is so is not admissible." (internal citations omitted)). Thus, the CorrHealth Defendants have not established that there are

no genuine disputes of material fact, or that they are entitled to judgment as a matter of law on Goff's medical negligence claims.

*Standing.* Finally, the CorrHealth Defendants argue that Goff's medical negligence claims should be dismissed due to lack of standing. CorrHealth Defs.' Mot. at 18. It is unclear to the undersigned why the Defendants assert that Goff lacks standing to bring these claims. The CorrHealth Defendants argue that even if the Court chooses to exercise supplemental jurisdiction over Goff's state law claims, the "standing issues addressed in this motion allow the Court to dismiss all claims on both state and federal grounds." *Id.* Their motion, however, does not present any standing issues. *See generally id.*

In drafting their motion, the CorrHealth Defendants likely believed that the Court would decline to exercise supplemental jurisdiction over Goff's medical negligence claims. *See id.* at 18. As a result, the CorrHealth Defendants did not expend much effort establishing their entitlement to summary judgment as to those claims. *Id.* Consequently, they have failed to establish that there are no genuine disputes as to any material facts and that they are entitled to judgment as a matter of law here. Accordingly, the Court should **DENY** the CorrHealth Defendants' Motion for Summary Judgment on Goff's state-law medical negligence claims.

### iii.    CONCLUSION

For these reasons, the Court should **GRANT IN PART** and **DENY IN PART** Defendant McLennan County's Motion for Summary Judgment (ECF No. 58) and Defendants CorrHealth, LLC, Danita Loftis, Melissa Jarrett, and Deborah Sant'anna's Motion for Summary Judgment (ECF No. 59). Should the Court adopt this Report & Recommendations, the following claims will remain: (1) Goff's medical negligence claims, under Chapter 74 of the Texas Civil Practice and Remedies Code, against Defendants CorrHealth LLC, Loftis, Sant'anna, and Jarrett; (2) Goff's § 1983 conditions-of-confinement claim against McLennan County; and (3) Goff's §

1983 episodic act claim against McLennan County for its failure to protect him from a suicide attempt.

### iv.     OBJECTIONS

The parties may wish to file objections to this Report and Recommendation. Parties filing objections must specifically identify those findings or recommendations to which they object. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc). Except upon grounds of plain error, failing to object shall further bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas*, 474 U.S. at 150–53; *Douglass*, 79 F.3d at 1415.

**SIGNED this 21st day of November 2024.**

**JEFFREY C. MANSKE**
**UNITED STATES MAGISTRATE JUDGE**